```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES J. STRAPPLE, JR.,   )
                          )
        Petitioner,       )
                          )
     v.                   )   Civil Action No. 05-534
                          )
MARILYN BROOKS, et al,    )   Judge David S. Cercone
                          )   Magistrate Judge Amy Reynolds Hay
        Respondents.      )
```

REPORT AND RECOMMENDATION

I. RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

II. REPORT

In September 2000, a jury empaneled by the Court of Common Pleas of Westmoreland County found Petitioner, James J. Strapple, Jr., guilty of second-degree murder, robbery, theft by unlawful taking, receiving stolen property, and criminal conspiracy. The Honorable Richard E. McCormick, Jr. sentenced Petitioner to life without parole on the second-degree murder conviction, plus a consecutive term of four to eight years.

The Superior Court of Pennsylvania summarized the evidence admitted at Petitioner's trial in its October 3, 2001 Opinion affirming the judgment of sentence:

1

> [Petitioner] was involved with others in the robbery and fatal shooting of the victim, nineteen year old Glenn Obie Ford.  In a statement to police, [Petitioner] admitted that he and two other men decided to offer Ford a gun in exchange for crack cocaine. [Petitioner] contacted Ford and, while driving to pick him up, the men discussed robbing him.  In [a statement to police investigators, Petitioner] claimed that the robbery "was decided" upon, but he did not participate in the decision.  In any event, [Petitioner] conceded that he drove the men to a house in order to secure the gun and was present in the car when the men decided to rob Ford.  Once Ford got in the car, [Petitioner] made a fictitious telephone call to a person he pretended was a drug buyer.  He did this to make the victim believe that he knew someone with money who wanted to buy crack. [Petitioner] pretended to inform the "buyer" that the men were on their way with the drugs.
>
> Instead of meeting a buyer, however, [Petitioner] drove the car to a secluded area and pulled over.  All of the men got out of the vehicle.  Ford got a call on his cellular telephone and, according to [Petitioner's] statement, one of the other men shot Ford in the back of the head while he was talking on the phone.  After the victim fell to the ground, the men surrounded him. The shooter, Ronald Beers, took drugs from the body. The other man, Damon Leece, took money from Ford's pocket. [Petitioner] took the man's bracelet.  The trio then fled and once back at Leece's house they divided the money and drugs evenly among themselves.  Believing that a chip in the victim's cellular phone could lead police to them, [Petitioner] removed the chip and threw it away.  He also instructed Beers to dispose of the murder weapon.

(Reproduced Record ("RR") at 154-55).[1]

After unsuccessfully seeking relief from his convictions in state court on direct appeal (RR at 138-45, 154-63) and in a post-conviction proceeding pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA") (RR at 257-64, 287-94), Petitioner

---

[1]  The Reproduced Record is filed at Doc. 6.

filed with this Court a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1; see also Doc. 7).

**A.   Legal Analysis**

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132 § 104, 110 Stat. 1214, restricts a federal court's authority to grant relief when a state court has previously adjudicated and rejected the petitioner's federal constitutional claims.  28 U.S.C. § 2254(d).  It provides, in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Price v. Vincent, 538 U.S. 634, 641 (2003); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).

Petitioner raised each of the claims contained in the instant petition to the state courts either on direct review or during the PCRA proceedings.  The state courts rejected each claim on the merits.  Accordingly, the only issue this Court must

resolve is whether Petitioner has demonstrated that the state courts' adjudication of his claims resulted in a decision that satisfies the standard set forth in § 2254(d).

    **1.**    **Miranda Claim**

At trial, the prosecution admitted into evidence a pre-arrest statement Petitioner made to Detective Mark Zupan and Detective Corporal William Corrie at the Naval Investigative Service Building, Parris Island, South Carolina.  In his statement, Petitioner admitted to being involved in the plot against the victim.

Prior to his trial, Petitioner filed a motion seeking to suppress his statement because it was obtained in violation of his Fifth Amendment rights as set forth in Miranda v. Arizona, 384 U.S. 436, 444 (1966).[2]  (RR at 19).  Following a hearing, the Honorable John E. Blahovec denied Petitioner's motion.  (RR at 321-22).  Petitioner challenged the denial of his motion on

---

[2]  The Supreme Court of the United States recently reiterated:

> [T]o reduce the risk of a coerced confession and to implement the Self-Incrimination Clause . . . this Court in Miranda concluded that the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored. Miranda conditioned the admissibility at trial of any custodial confession on warning a suspect of his rights: failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained.

Missouri v. Seibert, 524 U.S. 600, 608-09(2004) (internal citations and quotations omitted).

4

direct appeal. The Superior Court of Pennsylvania affirmed Judge Blahovec's decision. (RR at 158-59).

Petitioner contends that he was not free to leave when the investigators interviewed him, and that because he was in "custody" his statement should have been held to be inadmissible. The Court of Appeals for the Third Circuit has explained:

> Ordinarily, in determining whether an individual is in custody, the ultimate inquiry is "whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 [ ] (1983) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 [ ] (1977) (per curiam)). When the individual has not been openly arrested when the statements are made, "'something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so.'" Steigler v. Naderson, 496 F.2d 793, 799 (3d Cir. 1974) (quoting United States v. Hall, 421 F.2d 540, 545 (2d Cir. 1969)).

Reinert v. Larkins, 379 F.3d 76, 86 (3d Cir. 2004).

At the suppression hearing, the detectives who interviewed Petitioner testified that they told him that he "was not under arrest.... he was free to leave. He could go back to his platoon any time. He didn't have to answer [their] questions." (RR at 318, 301; RR at 7). Judge Blahovec credited the detectives' testimony and determined that Petitioner was not in custody at the time he made his statement.[3] (RR at 321). His findings are

---

[3] Petitioner also contends that he was not free to leave because his Marine Corps superior told him "to cooperate with the detectives so that they could leave and he could return to training." (Doc. 7 at

supported by the record, and Petitioner has not demonstrated that those findings are "an unreasonable determination of the facts in light of the evidence presented" at the suppression hearing.  28 U.S.C. § 2254(d)(2).  See also Weeks v. Snyder, 219 F.3d 245, 259 (3d Cir. 2000) (federal habeas statute provides federal habeas courts no license to redetermine the credibility of witnesses whose demeanor has been observed by the state trial court, but not by the federal habeas courts).

Judge Blahovec further held that, even if Petitioner was in custody, he was advised of his Miranda rights and he waived those rights.  (RR at 27-28).  Petitioner contends that his waiver was not voluntary.  The Court of Appeals for the Third Circuit has explained the two-pronged test for waiver:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

---

6).  He contends that the superior officer's statement imparted to him that he had to talk to the investigators.  (Id.)  It does not appear that Petitioner raised this argument in his pre-trial motion or at the suppression hearing, (RR at 18-22; RR at 297-322), or that he has ever presented the state courts with any evidence to support his bald assertion that his superior officer pressured him into not exercising his rights and/or confessing.

6

Reinert, 379 F.3d at 88 (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).

A review of the suppression hearing transcript reveals that the Commonwealth presented evidence to establish that there was no intimidation, coercion, or deception that pressured Petitioner to waive his rights. Judge Blahovec's finding that Petitioner voluntarily waived his Miranda rights is supported in the record, and Petitioner has not demonstrated that it was "an unreasonable determination of the facts in light of the evidence presented" at the suppression hearing, 28 U.S.C. § 2254(d)(2).

Finally, Petitioner has not demonstrated that the Superior Court's rejection of this claim was "contrary to" or an "unreasonable application of" Miranda and its progeny. Id. § 2254(d)(1).

### 2. Sufficiency of the Evidence

Next, Petitioner contends that the Commonwealth's evidence was insufficient to sustain the jury's verdict of guilt on the second-degree murder conviction. Under Pennsylvania law, second-degree murder is the killing of another while "engaged as a principal or an accomplice in the perpetration of a felony," and includes the "commission, attempt to commit, or flight after committing, or attempting to commit, robbery[.]" 18 PA.CONS.STAT. § 2502.

To assess a claim that the evidence is constitutionally insufficient to sustain a conviction, a court must consider whether, viewing the evidence in the light most favorable to the prosecution, any rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Orban v. Vaughn, 123 F.3d 727, 731-33 (3d Cir. 1997). In denying relief on this claim, the Superior Court held:

> [Petitioner] insists that because he did not plan the robbery, he was not an "active participant" and so is not guilty of the underlying felony [necessary for a second-degree murder conviction.] However, the evidence establishes otherwise. [Petitioner] and others, in possession of a gun, picked up the victim on the pretense of introducing him to a drug purchaser. [Petitioner], who knew that his friends were armed and were planning to rob the victim, drove the car and even made a fake telephone call in an effort to continue the ruse. Thereafter, he pulled off the road to a secluded area and got out of the car. One of [the] other men then shot the victim and all three men, including [Petitioner], took items from the body. They fled, divided the loot and attempted to avoid detection by the police.
>
> When viewed as it must be in the light most favorable to the Commonwealth, this evidence is sufficient to establish that [Petitioner] was either a principal or an accomplice in the robbery and that the victim was killed in furtherance of that robbery. In light of the evidence, particularly [Petitioner's] own statement and the order of events as he recalled them, we reject his contention that the victim's death was "independent of any felony" and "wholly unconnected to it."

(RR at 155-56).

The Superior Court aptly set forth why a rational finder of fact could have found the elements of second-degree murder beyond

a reasonable doubt.  Essentially, Petitioner takes issue with the jury's crediting of the Commonwealth's case.  It is within the jury's province, however, to credit the evidence as it saw fit.  Moreover, in reviewing this claim, this Court must consider the evidence in the light most favorable to the prosecution.  <u>Jackson</u>, 443 U.S. at 319.

In sum, the Superior Court's decision that there was sufficient evidence to support a conviction of second-degree murder was not "contrary to" nor an "unreasonable application of" "clearly established Federal law," and it did not result "in a decision that was contrary to, or involved an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

### 3. Ineffective Assistance of Counsel

Petitioner raises numerous claims that he received ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights.  In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court of the United States held that in order to show counsel rendered constitutionally ineffective assistance, a petitioner must demonstrate: (1) that counsel's performance was unreasonable;[4] and (2) that the deficient

---

[4] To meet the first requirement of <u>Strickland</u>, the petitioner must establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  466 U.S. at 688.  A court must indulge a strong presumption that counsel's conduct falls within the wide range of

performance prejudiced the defense.[5]  See also Wiggins v. Smith, 539 U.S. 510, 521 (2003); Williams, 529 U.S. at 390-91.

### (a) Failure to Call Character Witnesses

Petitioner contends that his trial counsel provided him with ineffective assistance because she failed to call character witnesses to testify on behalf of the defense.  He raised this claim during the PCRA proceedings and submitted certifications from the following individuals who claimed that he/she was available and willing to testify as to his good character: (1) his mother, Denise Strapple; (2) his father, James Strapple, Sr.; (3) Cheryl Downey; and (4) Donna Gardone.  (RR at 198-201).

In rejecting this claim, the Superior Court noted that the character evidence at issue would not have been admissible because it was irrelevant.[6]  (RR at 289-90).  This Court is bound

---

reasonable professional assistance; that is, the petitioner must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689, 690-92.  The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place.  Id. at 689.  Obviously, when a petitioner claims that his counsel failed to raise a claim that the court determines to be meritless, habeas relief under Strickland is not available.  See id. at 691 (the failure to pursue "fruitless" claims "may not be challenged as unreasonable.")

[5]  To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

[6]  The Superior Court stated: "[A]s the trial court points out, testimony that [Petitioner] was temperamentally pacific would have been irrelevant in view of his admitted participation in the crime,

by the Superior COurt's decision on state law, <u>Priester v. Vaughn</u>, 382 F.3d 394, 402 (3d Cir. 2004), and, accordingly, Petitioner was not prejudiced by counsel's alleged failure to gather this evidence.

Additionally, the Superior Court noted that at the PCRA hearing Petitioner's trial counsel articulated objectively reasonable bases for not attempting to call as defense witnesses the individuals at issue.  Counsel stated that Petitioner did not mention Downey and Gardone in response to her request for character witnesses.  (RR at 922).  She further testified that she decided not to attempt to call his mother as a defense witness because his mother "was visibly intoxicated during the course of the trial."  (RR at 924).  Finally, counsel stated that she did not attempt to call his father because he had been the subject of a protection from abuse order obtained by Petitioner's mother and she "didn't want any kind of violent history coming out on cross-examination."  (RR at 923-24).

Although Petitioner contends "that trial counsel's assessments of his parents . . . [was] completely absurd" (Doc. 7 at 16) and that he did indeed tell his counsel about Gardone and Downey, the PCRA Court credited counsel's testimony and not Petitioner's.  This court is bound by that credibility

---

despite the argument that his acts were insufficient to establish his status as a conspirator or accomplice, as there was no dispute that [Petitioner] had not been the shooter."  (RR at 289-90).

determination and Petitioner has not demonstrated that it was "an unreasonable determination of the facts in light of the evidence presented" at the PCRA hearing. 28 U.S.C. § 2254(d)(2); see also Weeks, 219 F.3d at 259. Additionally, Petitioner has not demonstrated that the Superior Court's subsequent rejection of this claim was "contrary to" or an "unreasonable application of" Strickland. Id. § 2254(d)(1).

### (b)  Failure to Call Petitioner to Testify in His Defense

Petitioner claims that trial counsel was ineffective for failing to call him at trial to testify in his own defense. He contends that he could have testified about the effect that Marine Corps basic training had on his power to resist the purported coercive police interrogation and that his confession was false.

At the PCRA hearing, trial counsel articulated objectively reasonable bases for not calling Petitioner as a witness. First, she noted that Petitioner never told her he had lied to the police when he confessed to the crimes, or that the military environment made him feel coerced into confessing. (RR at 936). As a result, Petitioner gave her no indication that putting him on the stand to so testify would have been ethical or beneficial to the defense. She also stated that she explained to Petitioner that if he testified in his defense, potentially damaging evidence would be admitted on cross-examination and she therefore

advised him not to testify. (RR at 934). She stated that Petitioner agreed that it was not in his best interest to testify. (Id.)

The PCRA Court credited counsel's testimony regarding this claim and determined that, under the circumstances, her conduct was objectively reasonable. The PCRA court's determination was not "an unreasonable determination of the facts in light of the evidence presented" at the PCRA hearing, 28 U.S.C. § 2254(d)(2), and the Superior Court's subsequent rejection of this claim was not "contrary to" or an "unreasonable application of" Strickland. Id. § 2254(d)(1).

**(c)   Failure to Present Mental Health Expert**

Next, Petitioner contends that his trial counsel provided him with ineffective assistance because she failed to retain a psychologist to testify for the defense. At the PCRA hearing, Petitioner stated that he was so overborne by the circumstances of basic training that he confessed to the crimes because he was directed by a commanding officer to "tell them what they want to hear [.]" (RR at 909). He claims that a psychologist could have provided expert testimony to support an argument that because of his circumstances, his confession to the police was untrue and not voluntary.

The Superior Court determined that this claim was baseless. It was persuaded by the PCRA Court's assessment that the evidence

admitted at the post-conviction hearing and at the pre-trial suppression hearing established that Petitioner was "in complete control of his faculties and under no compulsion to blindly 'obey.'"[7] (RR at 260). As a result, there was no indication to trial counsel that a mental health expert's testimony would have been of helpful or that such testimony would have been admissible at trial.

Moreover, Petitioner has not introduced any evidence to support his "abstract assertion" (RR at 260) that a psychologist would have provided favorable testimony to the defense. Under Strickland, it is the petitioner, and no one else, who has the burden to prove all facts in support of his claim. Sistrunk v. Vaughan, 96 F.3d 666, 671 (3d Cir. 1996). Without testimony from a psychologist that supports Petitioner's theory, he cannot establish that he was prejudiced by counsel's conduct.[8]

---

[7] The Superior Court further noted that "the putatively coercive atmosphere of Parris Island, including the supposedly direct order of Marine Corps superiors, did not deter [Petitioner] from initially disclaiming all knowledge of the murder." (RR at 291 n.1).

[8] Petitioner did seek to have an expert psychologist appointed prior to the PCRA hearing; however, the court rejected the request because it was not prepared "to simply allow the defense to go on a fishing expedition with regard to that issue." (RR at 873). Petitioner asserts that the PCRA Court denied him a full and fair hearing for denying his request. There is no merit to that assertion. Under Pennsylvania law, the PCRA Court had the discretion as to whether to appoint a mental health expert. There is no federal constitutional right to the appointment of an expert under the circumstances presented here. Cf. Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998)("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into

### (d)   Failure to Present Defense Strategy

Finally, Petitioner contends that he received ineffective assistance because his trial counsel relied upon inadmissible evidence as the basis for her defense strategy. The inadmissible evidence to which he refers is evidence that his co-conspirator Beers had been acquitted of robbery and criminal conspiracy in his separate trial.

It is not disputed that the verdict in Beers's case was inadmissible at Petitioner's trial. (RR at 293)  The Superior Court rejected this claim, however, because Petitioner mischaracterizes trial counsel's strategy as being dependent upon this inadmissible evidence. (RR at 293-94).  As the PCRA court stated:

> To the contrary, her argument was that based upon all of the facts presented in the Petitioner's jury trial, the facts were legally insufficient to prove every element of the offenses charged. Just because [trial counsel] may have wished to point out that another jury agreed with her assessment of the facts with respect to a co-defendant, she did not rely on this impermissible disclosure alone, but argued facts in the Petitioner's case which she thought led to the conclusion that the Petitioner should be acquitted.

(RR at 262-63). This assessment was not an unreasonable determination of the facts in light of the evidence presented at trial and at the PCRA hearing, 28 U.S.C. § 2254(d)(2), and the

---

the habeas calculation. . . . Federal habeas power is limited . . . to a determination of whether there has been an improper detention by virtue of the state court judgment.")(internal quotations omitted).

Superior Court's rejection of this claim was not "contrary to" or an "unreasonable application of" Strickland.  Id., § 2254(d)(1).

## B. Certificate of Appealability

Section 102 of AEDPA, 28 U.S.C. § 2253(c), codifies standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  In the case at bar, Petitioner has not made any showing that he has been denied any of his constitutional rights.  Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition be denied and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules, the parties are all owed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file

timely objections may constitute a waiver of any appellate rights.

                                         Respectfully submitted,

                                         /s/ Amy Reynolds Hay
                                         AMY REYNOLDS HAY
                                         United States Magistrate Judge

Dated: 14 March, 2006

cc:  Hon. David S. Cercone
     United States District Judge

     James J. Strapple, Jr.
     EK-6521
     SCI Albion
     10745 Route 18
     Albion, PA 16475-0004

     Judith P. Petrush
     Assistant District Attorney
     District Attorney's Office
     2 North Main Street
     Suite 206
     Greensburg, PA 15601